COVINGTON, Judge:
The factual circumstances giving rise to this litigation is set forth properly by the trial judge as follows:
“This suit arises from a lease executed in March of 1968 whereby the plaintiff, J. E. Sumrall & Sons, Inc., leased Lots Number 203 and -204 of Pasadena Subdivision to the defendants, Watson & Coxe Construction Company, Inc. and Warren O. Watson. At the time that the lease was entered into, the two lots *695 formed a parcel of land with approximately 200 feet fronting on Greenwell Springs Road and approximately 185 feet in depth on Althea Drive, and contained a brick veneer residential structure. The lease had a primary term of 20 years and it gave the lessees options for additional terms.
“The plaintiff alleges that the defendants are in default with respect to their obligations under the lease, and it demands payment of the remaining unpaid rentals. The Estate of Warren O. Watson, one of the defendants, has brought a third party demand against its code-fendant, Watson & Coxe Construction Co. on the grounds that Mr. Watson signed as lessee solely as an accommodation to Watson & Coxe, which received all of the benefits of the lease. Watson & Coxe has judicially admitted these allegations, and has obliged itself, in the event that Mr. Watson’s estate is cast in judgment, to indemnify the estate in the amount of any such judgment. Thus, in practical terms, the plaintiff’s suit is directed chiefly at Watson & Coxe Construction Co.
“The plaintiff’s demand is based upon the fact that Watson & Coxe paid the stipulated rent from the time the lease was executed until October 31, 1973, but has not paid any rent since that time. The defendant contends, and all the parties agreed in the pre-trial order, that the defendant gave the plaintiff written notice of its intent to cancel the lease in November of 1973. The defendant bases its alleged right to cancel the lease on a provision found on page 5 of the lease, which reads as follows:
“ ‘If the demised premises or any part thereof shall be taken by or pursuant to governmental authority or through exercise of the right of eminent domain, or if a part only of said premises is taken and the balance of said premises in the opinion of said Lessees is not suitable for the operation of its business, or the business of its assigns, this lease, at the option of the Lessee, shall terminate without further liability on the part of Lessees, or the rent hereunder shall be reduced in proportion to the reduction in the area of the premises, but nothing herein shall be deemed a waiver of the sole right of Lessees to any award for damages to it or to its leasehold interest caused by such taking, whether made separately or as a part of the general award.’
“On March 6, 1970, the State of Louisiana, through the Department of Highways expropriated a portion of the parcel of land that fronted on Greenwell Springs Road and had an average depth of approximately 50 feet. Thus, after the taking by the State, the leased property had dimensions of roughly 200 feet in length and 135 feet in depth. The lessee took the position that the property was no longer suitable for the .operation of its business, and decided to exercise its option to terminate the lease.” [1]
The lease called for an annual rental of $3,900.00, payable $325.00 per month for the first ten years of the primary term of 20 years.
Upon the termination of the lease by the lessees plaintiff-appellant filed suit to compel the defendant-appellees to pay the sum of One Hundred Nineteen Thousand, Two Hundred Twenty-five ($119,225.00) Dollars, plus legal interest, cost and reasonable attorneys fees. The said amount represents $59,225.00 as the balance due under the lease, $30,000.00 for an improvement that defendant was to build within a reasonable time after the lease was confected, and $30,000.00 as the value of a house demolished by the lessor *696 in accordance with the lease provisions. Defendant answered plaintiff’s suit and reconvened for an amount totalling $102,725.00, with $2,725.00 thereof representing overpayment because the talcing by the State of Louisiana equals approximately 25% of the total premises (9,855 square feet of the original 39,600 square feet) and 25% of the rents paid for the fifteen months since the taking would equal $2,725.00, and $100,000.00 thereof was for damages sustained by defendants as a result of malicious prosecution. As to the latter claim the defendants filed an exception of no right of action or no cause of action based on the premise that a cause of action, for malicious prosecution cannot exist until there has been a final determination of the original proceedings in favor of the defendant. The lower court did not specifically rule on this nor did he allude to it in his Written Reasons for Judgment; therefore, we must assume that he referred it to the merits.
After trial, the court rendered judgment rejecting' all of the plaintiff’s demands, dismissed its case, and also dismissed the reconventional demand and the third party demand.
Appellant, J. E. Sumrall & Sons, Inc., brings this appeal, alleging that the lower court committed error in deciding (1) that appellees, Watson & Coxe Construction Company, Inc., had a right to cancel the lease because of its contention that the taking by the State of Louisiana, through the Department of Highways, caused the subject property to be unacceptable to appellee, (2) that the appellees’ failure to construct the building worth $30,000.00 is not com-pensable damage due appellant, (3) not to award appellant any compensation for the demolition of the structure that existed on the leased premises at the inception of the lease, and (4) not to award attorney’s fees.
LSA-C.C. Art. 2697 states:
“If, during the lease, the thing be totally destroyed by an unforseen [unforeseen] event, or it be taken for a purpose of public utility, the lease is at an end [by operation of law]. If it be only destroyed in part, the lessee may either demand a diminution of the price, or a revocation of the lease. In neither case has he any claim of damages.”
LSA-C.C. Art. 1764 states that:
“A. All things that are not forbidden by law, may legally become the subject of, or the motive for contract; but different agreements are governed by different rules, adapted to the nature of each contract, to distinguish which it is necessary in every contract to consider:
# jfi Jjc
“3. Accidental stipulations, which belong neither to the essence nor the nature of the contract, but depend solely on the will of the parties. The term given for the payment of a loan, the place at which it is to be paid, and the nature of the rent payable on a lease, are examples of accidental stipulations.
“What belongs to the essence and to the nature of each particular description of contract, is determined by the law defining such contracts; accidental stipulations depend on the will of the parties, regulated by the general rules applying to all contracts.”
The above quoted articles, coupled with the lease provisions that in the event of expropriation of a part of the premises "... and the balance of said premises in the opinion of said lessee is not suitable . the Lessees are given the option to terminate the lease without further liability on the part of lessees, ... or the rent hereunder shall be reduced in proportion to the reduction in the area of the premises, . . . ” is abundantly clear. The lease could be terminated in the factual situation found in this case.
The taking by the State of Louisiana was the apparent evil against which the appellees were guarding and the lease, be *697 ing freely entered into by all of the parties and not against law or public morals, is binding on appellants. This specification presents no error on the part of the lower court.
The lower court refused to award compensable damages to appellants for ap-pellee’s failure to construct a building worth $30,000.00 on the premises. The lease provided that: “Lessor shall have the right to remove the buildings and improvements now located on the property herein leased for a period of six (6) months from this date. . . . Lessees obligate themselves to erect buildings and improvements on the leased premises, within a reasonable time period to cost no less than Thirty Thousand and No/100 ($30,000.00) Dollars.”
Noting the fact that this agreement was entered into on March 12, 1968, the trial court in his Written Reasons for Judgment held that:
“Thus, the plaintiff’s claim for damages must be governed by a consideration of whether, under the circumstances, the lessee should have built a structure in the time between when the house was demolished in 1972 and when the lease was terminated in November of 1973. By the time the house was demolished, the State had already taken the property for the improvement of the highway, and Mr. Coxe had already had some of his offers to sublease the property refused by some of the major oil companies. The lessee could have terminated the lease then with no obligation to construct improvements having yet accrued. Instead, the lessee continued to pay the full rent and to make a good faith effort to market the property to someone who would construct the improvements called for in the lease. Certainly, under those circumstances, this Court connot (sic) say that the fact that the lessee did not construct improvements with a value of $30,000.00 amounted to a breach of the lease. Under the circumstances with which the lessee was faced, a ‘reasonable time’ had not yet elapsed when the lease was terminated. Therefore, the lessor is not entitled to damages for the lessee’s failure to construct improvements on the property.”
We agree with this conclusion reached by the lower court.
The third error alleged addresses itself to the trial judge’s refusal to award damages for the demolition of the structure that existed at the time the lease was entered into. Again, looking to the court’s Written Reasons for Judgment:
“Likewise the lessor is not entitled to damages for the destruction of the structure that was on the property when the lease was executed. As was noted above, the lessor continued to collect the rent from the tenants of the structure for a year and a half after the lease was signed. And the lessor received the salvage from the house when it was demolished. The destruction of the house was expressly contemplated and provided for in the lease, and the plaintiff is not entitled to damages for its destruction.”
The issues involved herein appear to be issues of fact, and an analytical disposition of the facts and conclusions of the trial judge should not be disturbed in the absence of manifest error; Jayco Sales & Service, Inc. v. Smith, 303 So.2d 554 (La. App. 1st Cir. 1974). We find, under the facts and circumstances of this case, that the record supports the findings of the trial court and that there was no manifest error therein.
The fourth alleged error, i. e., attorney’s fee for plaintiff-appellant, is thereby rendered moot.
Accordingly, the judgment of the lower court is affirmed; all costs are to be paid by appellant.
Affirmed.

. The area taken was in connection with State Project No. 25T-02-17, Courtland Drive-Sullivan Road (Greenwell Springs Road) and it is graphically depicted on the strip map introduced at the trial by the plaintiff.